```
           IN THE UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF MISSISSIPPI
                      WESTERN DIVISION
```

**QUINDOLYN WINGFIELD**                                                    **PLAINTIFF**

**vs.**                                                          **5:12cv13DCB-JMR**

**CLAIBORNE COUNTY FAMILY HEALTH CENTER**                       **DEFENDANT**

## OPINION AND ORDER

Before the Court is Defendant Claiborne County Family Health Center's ("CCFHC") Motion for Summary Judgment [**docket no. 27**], which is opposed by Plaintiff Quindolyn Wingfield. Having carefully considered the Parties' arguments, evidence produced thereto, applicable statutory and case law, and being otherwise fully advised in the premises, the Court grants the Motion in part and denies the Motion in part.

## RELEVANT FACTS

Wingfield is a former eighteen-year employee of CCFHC. On August 1, 2010, Wingfield had knee replacement surgery, which required a prolonged absence from work. CCFHC knew about Wingfield's absence and apparently expected her to return to work by December 1, 2010, but it did not provide Wingfield with individualized notice that her leave would count against her twelve-week Family and Medical Leave Act ("FMLA") entitlement. When she did not return to work by December 1, 2010, CCFHC asked Wingfield to provide written documentation regarding when she planned to return to work. Wingfield provided documentation stating that she could not return at present, but there is no indication as

to whether she provided CCFCH with an expected return date. In March 2011, CCFHC's CEO, James Oliver, met with Wingfield, who still had not returned to work, to discuss the matter. Sometime shortly thereafter, Wingfield's employment with CCFHC was terminated (CCFHC provides two different dates for Wingfield's termination). Wingfield now brings suit to recover against CCFHC for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the FMLA, 29 U.S.C. § 2601 et seq.

## STANDARD OF REVIEW

Summary judgment is apposite "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real Estate P'ship v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted). The party moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to

the non-moving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Moreover, "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 252. Summary judgment must be rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

## ANALYSIS

*1. Wingfield Does Not Qualify as Disabled Under the ADA*

Wingfield's ADA claim is evaluated under the McDonnell Douglas framework. See Patterson v. Yazoo City, Miss., 847 F. Supp. 2d 924, 940-41 (S.D. Miss. 2012) (citing McInnis v. Alamo Cmty. Coll. Dist., 207 F.3d 276, 279-80 (5th Cir. 2000)). CCFHC focuses its argument exclusively on the first requirement of the prima facie test, that is, whether Wingfield has a disability under the ADA. Patterson, 847 F. Supp. 2d at 941. CCFHC contends that Wingfield's

claim is (or must be) based on the fact that she has lupus. In support of its argument, CCFHC references Wingfield's deposition in which she admits that she suffers from lupus but that the condition did not affect her ability to return to work. In the alternative, CCFHC argues that temporary complications resulting from Wingfield's knee replacement surgery also would not qualify her as disabled under the ADA. In response, Wingfield contends that she is (or was) disabled as a result of complications from her knee replacement surgery. But she supports her ADA claim with citations to Oliver's deposition in he which suggests that he dismissed her because she was adversely affected by lupus. The difficulty the parties have in pinpointing the exact nature of Wingfield's disability initially suggests that her ADA claim is meritless, and further investigation confirms this suggestion.

In order to qualify as disabled under the ADA, Wingfield must show that her knee replacement surgery caused an impairment that "substantially limits one or more of the major life activities." 42 U.S.C. § 12102(1); see also Kemp v. Holder, 610 F.3d 231, 235 (5th Cir. 2010). For the Court to make this determination, it must consider the following factors: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact of the impairment." 29 C.F.R. § 1630.2(j); see also Brown v. Bd. of Trs. Sealy Indep. Sch. Dist., 871 F. Supp. 2d 581, 605 (S.D. Tex. 2012).

Under these factors and Fifth Circuit precedent, a temporary impairment does not constitute a disability. <u>Chollett v. Patterson-UTI Drilling Servs., LP, LLLP</u>, 2011 WL 4592378, *6 (S.D. Tex. Sept. 30, 2011) (citing <u>EEOC v. Chevron Phillips Chemical Co., LP</u>, 570 F.3d 606, 619 (5th Cir. 2009)).

Focusing first on the knee replacement surgery, Wingfield does not allege that this surgery resulted in a permanent or long-term impairment that substantially limits her ability to perform a major life activity. Instead, she provides evidence to suggest that her knee replacement surgery *temporarily* limited her ability to return to work because she was unable to walk pain-free up to one year after her surgery. <u>See</u> Wingfield Aff. ¶ 3. Underscoring the temporary nature of her ailments, Wingfield now claims that she is ready to return to work and does not claim to currently have any limitations, significant or otherwise, on her ability to work. Wingfield Aff. ¶ 4. Contrary to her assertion, Wingfield's inability to stand, sit, or walk without pain for eight months after her knee replacement surgery does not qualify her as disabled under the ADA. <u>See</u> Wingfield Depo. at 70.

To the extent that Wingfield contends in her brief that she was "regarded as" disabled because of lupus, this claim also fails.[1] "An individual is regarded as disabled when either (1) a

---

[1] Wingfield does not argue that she is disabled because of lupus but does suggest with her references to the record that she was terminated because of a perceived disability related to lupus.

5

covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." Hodges v. ISP Techs., Inc., 427 F. App'x 337, 341 (5th Cir. 2011) (internal quotations marks and citation omitted). In other words, what matters is how the employer views the employee's ability to perform a life activity, e.g. walking, sitting, standing, working, not whether the employer believes the employee cannot perform a particular job. Hodges, 427 F. App'x at 341.

Although Oliver did state that Wingfield's pre-surgery medical condition (probably lupus) factored into his decision that Wingfield would be unable to return to her former job, he explained that the nervousness attendant to this condition was causing her to "stick different patients" while administering shots. See Oliver Depo. at 34-35. Oliver's statements are not completely understood by the Court, but they do not suggest that he or anyone else from CCFHC regarded her as substantially limited in her ability to perform "a broad range of jobs." Hodges, 427 F. App'x at 341. They simply indicate that Oliver regarded Wingfield as unable to

---

In fact, she was clear in her deposition that her knee replacement surgery is the basis of her ADA claim. Wingfield Depo. at 70.

6

competently perform her former job. Accordingly, Wingfield's ADA claim also fails on this ground, and therefore CCFHC is entitled to summary judgment as a matter of law.

*2. Wingfield May Have a Viable FMLA Claim*

But Wingfield may have a viable FMLA claim because CCFHC failed to provide her with individualized notice that her leave would count against her twelve-week FMLA entitlement. 29 CFR § 825.300(b) provides that "[w]hen an employee requests FMLA leave, *or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason*, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances." (emphasis added);[2] see also Downey v. Strain, 510 F.3d 534, 540 (5th Cir. 2007) (holding that the now-revised FMLA notice requirements were valid and enforceable in the Fifth Circuit, even though the United States Supreme Court in Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81 (2002), invalidated the then-applicable regulatory punishment in the event that the employer fails to provide notice). As the Court understands it, CCFHC argues that it is exempt from this notice provision because its employee handbook placed the burden on the employee to notify it of the need for

---

[2] The regulations cited in this opinion are the ones effective from January 16, 2009 to March 13, 2013. This is potentially significant because new regulations became effective on March 13, 2013 *and* because the notice requirements in place before January 16, 2009, have been revised.

7

FMLA leave in order to trigger its duty to provide the employee with notice. That argument is wrong. "[T]he rights established by the [FMLA] may not be diminished by any employment benefit program or plan 29 CFR § 825.700(a)." Thus, CCFHC's handbook cannot disclaim the right to notice conferred upon Wingfield by the FMLA. See also 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."). Since CCFHC's handbook argument is the sole basis for summary judgment as to Wingfield's FMLA claim, see Def.'s Br. at 8-9, the Court will deny the Motion as to this claim.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. The Plaintiff's ADA claim is dismissed with prejudice, but her FMLA claim may proceed under 29 U.S.C. § 2617. The Court is uncertain about what theory of liability the Plaintiff is asserting in her "failure to train on the FMLA," but to the extent that the Plaintiff is attempting to allege a claim outside of the FMLA, e.g., § 1983 liability, that claim is dismissed with prejudice because the Plaintiff did not rebut the Defendant's assertion that such a theory of liability does not exist in this context. In addition, the Plaintiff has conceded that the facts do not support a wrongful discharge claim under Mississippi law, so that claim is

8

also dismissed with prejudice. In sum, the Plaintiff has a FMLA claim only.

So **ORDERED,** this the 22nd day of April, 2013.

                                         /s/ David Bramlette
                                         **UNITED STATES DISTRICT JUDGE**